THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES M. FIELDS, Defendant-Appellant.

Fifth District   No. 5—87—0639

Opinion filed May 25, 1990.

Daniel M. Kirwan and Janet L. Gandy, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Thomas A. Dossett, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

After entering a plea of guilty to the charge of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)) defendant, James M. Fields, was sentenced to an extended term of 70 years' imprisonment. Defendant filed a motion to withdraw his guilty plea which was denied. Defendant appeals, contending (1) that he is entitled to a new sentencing hearing because the trial court based its sentencing decision on misperceptions, an improper aggravating factor and an error in the admission of a victim impact statement; and (2) that his extended-term sentence of 70 years' imprisonment was an abuse of discretion where the trial court erroneously concluded the murder was "particularly heinous and vicious." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).

The factual basis for the plea indicated that in the early morning hours of July 21, 1986, defendant was at a friend's house located across the street from the home of the victim, Louise Pasterski. The defendant had a .38 caliber revolver in his possession and told his friends that he needed money. Defendant noticed that the victim and her mother were leaving in their car, and told his friends he was going to break into the house. Defendant then went across the street. While defendant was at the house, Louise Pasterski and her mother returned. When they arrived, Pasterski noticed that a gate that was normally closed was open. At that point she armed herself with a revolver and took it with her as she exited her car to investigate. Pasterski encountered the defendant, who shot her once and fled the scene. Pasterski subsequently died from the gunshot wound. Defendant later told a friend that he intended to rob Pasterski, but shot her when she went for her gun. Defendant subsequently confessed to the murder to police.

The sentencing hearing was held on June 4, 1987, before the Honorable Roger M. Scrivner. No evidence was presented in mitigation. In aggravation, the prosecution introduced a victim impact statement of the victim's mother, prepared by the State's Attorney's office. The defense objected to the statement being admitted as evidence because it contained inadmissible material. The court overruled the objection, stating that it would not consider irrelevant matters in the statement. The court thereafter sentenced the defendant to an extended term of 70 years' imprisonment, noting that the murder was "particularly heinous and vicious" and that the defendant had an "apparent plan" to "eradicate" Louise Pasterski.

On May 19, 1987, defendant filed a *pro se* motion to withdraw his guilty plea. On August 24, 1987, the motion was denied. Defendant now appeals.

Defendant's first contention on appeal is that in sentencing him to an extended term of 70 years' imprisonment, the trial court made findings that indicated that it misperceived the circumstances of the offense. Defendant contends these misperceptions greatly affected the severity of the punishment imposed and that furthermore the court considered an improper aggravating factor and erred in admitting the victim impact statement. Defendant accordingly requests that his sentence be vacated and the cause remanded for a new sentencing hearing before a different judge.

■■ ■ The trial court observed that the murder was the result of an "apparent plan" by the defendant to "eradicate" Louise Pasterski. From our review of the record, however, we find that the factual basis which was presented to the judge showed that the only "plan" defendant had was to rob the Pasterskis or burglarize the Pasterski residence. Defendant had told his friends that he needed money. When he observed the victim and her mother leave the house, the defendant went across the street to the house to carry out his plan. Defendant's plan was interrupted by the return of the two women, and the defendant decided to rob Louise Pasterski. According to the defendant, Pasterski reached for her gun and the defendant then shot her. Contrary to the trial court's position, these facts do not indicate that the murder of Louise Pasterski was premeditated on defendant's part. To the contrary, the facts revealed a plan on the part of the defendant to commit burglary or robbery. We do not find from our review of the record that defendant went to the Pasterski residence in order to kill the women. We accordingly find that the trial judge's characterization of defendant's conduct as constituting a "plan" to "eradicate" Pasterski was erroneous. However, we find it unneces-

sary to remand this case for resentencing as requested by the defendant. Rather, we decide to exercise our authority under Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)) as set forth below in our discussion concerning defendant's second contention on appeal. *Cf. People v. Thomas* (1985), 139 Ill. App. 3d 163, 186, 486 N.E.2d 1362, 1378 (defendant's 60-year sentence for murder reduced to 40 years); *People v. Davis* (1984), 121 Ill. App. 3d 916, 923, 460 N.E.2d 471, 475 (defendant's 50-year sentence for attempted murder reduced to 30 years).

Defendant contends further, citing *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, that the trial court's finding that there was a "plan" to murder Pasterski implies that the trial court was using an element (*i.e.*, intent to kill) inherent in the offense of murder as an aggravating factor in sentencing. We disagree and find the court's statement was more likely directed to what the court felt were premeditated aspects of the defendant's conduct rather than to his specific intent at any point in time during the course of his conduct.

■■ ■ The defendant next contends the trial court erred when it admitted into evidence a written victim's impact statement from Louise Pasterski's mother. Defendant objected to the introduction of the statement at the sentencing hearing, contending that it contained improper matter. In overruling the objection, the trial court stated that irrelevant material would not be considered. We find that although the defendant objected at the sentencing hearing to "improper matter" in the statement, the defendant has not delineated what he deems improper nor did he ask the court to do so. On appeal, it is presumed the trial court recognized and disregarded any incompetent evidence introduced during sentencing. (*People v. Walker* (1983), 113 Ill. App. 3d 1074, 1083, 448 N.E.2d 208, 214, *cert. denied* (1984), 465 U.S. 1031, 79 L. Ed. 2d 697, 104 S. Ct. 1297.) Defendant relies on *People v. Simms* (1988), 121 Ill. 2d 259, 520 N.E.2d 308, to show plain error in the admission of the victim's impact statement. In *Simms* our supreme court, relying on *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, held that it was plain error to allow victim impact statements at a capital sentencing hearing. We find the *Simms* case to be inapplicable as the language in that case is limited to capital punishment cases. Moreover, in *People v. Turner* (1989), 128 Ill. 2d 540, 578, 539 N.E.2d 1196, 1213, *cert. denied* (1989), 493 U.S. 939, 107 L. Ed. 2d 326, 110 S. Ct. 337, the court expressly declined to extend the holding in *Booth* to a noncapital sentencing hearing.

■■ Finally, with respect to defendant's claim that a victim impact

statement may not be considered unless the author of the statement is present at the sentencing hearing, the defendant relies upon the following language:

"In any case where *** a victim of the violent crime is present in the courtroom at the time of the sentencing or the disposition hearing, the victim upon his or her request shall have the right to address the court regarding the impact *** upon the victim. If the victim chooses to exercise this right, the impact statement must have been prepared in writing in conjunction with the Office of the State's Attorney prior to the initial hearing or sentencing, before it can be presented orally at the sentencing hearing. The court shall consider any statements made by the victim ***." Ill. Rev. Stat. 1985, ch. 38, par. 1406.

The defendant contends that the statute allows presentation of a victim impact statement only when the victim is present at the sentencing hearing and makes an oral statement. In *People v. Wallace* (1988), 170 Ill. App. 3d 329, 332-34, 524 N.E.2d 677, 679-80, the court rejected an identical argument. We note, however, that the *Wallace* court made no reference to Public Act 83—1499, which amended section 6. (Pub. Act 83—1499, eff. Dec. 27, 1984.) The amendment deleted a sentence which read: "If the victim or family member is unable to appear in the courtroom, he or she may submit the written statement to the court which shall then become part of the record." (Ill. Ann. Stat., ch. 38, par. 1406, Historical Note, at 70 (Smith-Hurd 1989 Supp.).) We need not decide this issue, however, because we find that the victim impact statement was properly considered under section 5—4—1(a)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(a)(3)). This section provides that the court shall "consider evidence and information offered by the parties in aggravation and mitigation" at the sentencing hearing. Where, as here, the victim's statement is offered by the State in aggravation, section 6 is not applicable, and the statement may properly be considered by the court. (See *People v. Willis* (1989), 184 Ill. App. 3d 1033, 1044-46, 540 N.E.2d 1080, 1087-88; *People v. Keyes* (1988), 175 Ill. App. 3d 1013, 1016-17, 530 N.E.2d 708, 711; *People v. Estrella* (1988), 170 Ill. App. 3d 292, 294-96, 524 N.E.2d 707, 709-10.) Furthermore, the letter written by the victim's mother in this case could have been properly considered by the court as part of the presentence report. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2(a)(3); *People v. Bachman* (1981), 92 Ill. App. 3d 419, 424-25, 414 N.E.2d 1369, 1374.) We find no error.

■ Defendant's second contention on appeal is that the trial

court erroneously concluded that the murder was "particularly heinous and vicious," and therefore, erred in imposing an extended-term sentence of 70 years' imprisonment. Defendant primarily relies upon a lack of evidence of premeditation and the absence of infliction of numerous wounds as are present in other cases where extended-term sentences have been upheld on review. Defendant maintains his conduct was not so exceptionally brutal or heinous as to warrant an extended term of imprisonment.

The statutory extended-term provision pertinent to the instant case allows a trial court to impose an extended-term sentence upon a defendant convicted of any felony where "the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).) While the trial court's decision with respect to sentencing should not be reversed in the absence of an abuse of discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882), extended-term sentencing was not intended to enhance the punishment for every offense. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) Conduct is "heinous" if it is hatefully or shockingly evil, grossly bad, or enormously and flagrantly criminal. "Brutal" includes conduct which is grossly ruthless, devoid of mercy or compassion, or cruel and cold-blooded. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 501, 431 N.E.2d 344, 353.) It is clear that the legislative scheme in regard to extended-term sentences requires the degree of brutality or heinousness to be "exceptional." (*People v. Nester* (1984), 123 Ill. App. 3d 501, 504, 462 N.E.2d 1011, 1014.) In evaluating the brutality or heinousness of a defendant's conduct, the court must analyze and evaluate all of the facts surrounding the given incident. *Nester*, 123 Ill. App. 3d at 505, 462 N.E.2d at 1014.

In support of his position, defendant cites *People v. Thomas* (1985), 139 Ill. App. 3d 163, 486 N.E.2d 1362, a case similar to the case at bar where a murder committed during the course of an attempted armed robbery was held not to be brutal or heinous requiring the imposition of an extended-term sentence. In *Thomas*, the murder was committed during the course of an armed robbery. The defendants immediately fled the scene and nothing was taken from the victim. The trial court, citing the "cold-blooded nature" of the crime, imposed an extended-term sentence of 60 years. On appeal, the court reduced defendants' sentences to 40 years, observing that the murder was not exceptionally brutal or heinous, and that defendants were not so "cold-blooded" as to continue with the robbery. (*Thomas*, 139 Ill. App. 3d at 186, 486 N.E.2d at 1378.) While *Thomas* would certainly

suggest reversal, we feel compelled to find that the defendant's conduct was not exceptionally brutal or heinous in light of *People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025.

In *Andrews* the 18-year-old victim (Steinbrecher) and his 17-year-old girlfriend (Atiles) were stopped at a traffic light when the defendant got into the passenger side of the car and pointed a gun at them.

> "After trying unsuccessfully to pull away, by moving the gear shift, Steinbrecher told the two men to 'be cool, we'll give you what you want.' Following this, Atiles testified, she heard a 'crack' and saw that defendant had shot Steinbrecher. The man she identified as defendant then hit her in the left eye with his gun and ordered, 'Give me your money, bitch.' She gave him $7, all the money she had, and the men left.
>
> Steinbrecher died as a result of a gunshot wound to his right temple. Atiles was treated for an eye injury." (*Andrews*, 132 Ill. 2d at 454-55, 548 N.E.2d at 1027.)

The supreme court held that the trial court abused its discretion in sentencing the defendant to an extended term of 70 years' imprisonment. The court stated:

> "Although the victim was defenseless and the defendant could have achieved his goal of robbing the victim and the victim's girlfriend without killing the victim, every single murder is by nature unnecessary; section 5—5—3.2(b)(2), however, requires that the murder be 'exceptionally' brutal or heinous. All murders are brutal and heinous to a certain degree. Moreover, many murdered robbery victims are defenseless when killed. Section 5—8—2, however, allowing for extended-term sentences, 'was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence.' " *Andrews*, 132 Ill. 2d at 465-66, 548 N.E.2d at 1032.

■ Perhaps the willingness of the trial courts in *Andrews* and in this case to find that the murders were exceptionally brutal or heinous stems from a perception by the courts that a sentence of 40 years' imprisonment for murder is too lenient. Perhaps it is; we note that the maximum nonextended sentence for murder has been increased to 60 years' imprisonment (Pub. Act 85—902, eff. Jan. 1, 1988 (amending Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1)). The amendment to section 5—8—1 is not applicable to this defendant, however, since he was sentenced in 1987, and, because the circumstances of this murder are no more indicative of wanton cruelty than those in *Andrews*, we must find that the trial court abused its discretion in sentencing defendant to an extended term. Accordingly, pursu-

ant to the authority granted by Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)), we reduce defendant's sentence for murder to 40 years' imprisonment. We order issuance of an amended mittimus consistent with the modified sentence.

Affirmed as modified.

LEWIS, P.J., and RARICK, J., concur.