2025 IL App (1st) 231595-U

No. 1-23-1595

Order filed April 7, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 374501 |
| | ) | |
| KENNETH MITCHELL, | ) | Honorable |
| | ) | Adrienne Davis, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's sentence is affirmed over claims that the court considered improper
        aggravating factors and failed to properly weigh the mitigating factors.

¶ 2    Following simultaneous bench trials, defendant Kenneth Mitchell was found guilty of two

counts of predatory criminal sexual assault of a child in case number 16 CR 3744 and two counts

of aggravated criminal sexual assault, four counts of criminal sexual assault, and six counts of

aggravated criminal sexual abuse in case number 16 CR 3745. In case number 16 CR 3744, the

court imposed consecutive 20-year sentences. In case number 16 CR 3745, the court merged certain counts and imposed consecutive terms of 30 years' imprisonment for aggravated criminal sexual assault (count I) and 5 years' imprisonment for aggravated criminal sexual abuse (count IX). The sentences in each case were to run consecutively, for a total of 75 years' imprisonment.

¶ 3　　On direct appeal, this court affirmed defendant's convictions in case number 16 CR 3744, but reversed his convictions in case number 16 CR 3745 and remanded for sentencing on the merged counts. *People v. Mitchell*, 2020 IL App (1st) 181740-U, ¶ 32. On remand, the court again merged certain counts and imposed 13 years' imprisonment for aggravated criminal sexual assault (count IV) and 4 years' imprisonment for aggravated criminal sexual abuse (count XI) to be served consecutively. On appeal, defendant argues that this sentence is excessive because the court considered improper aggravating factors and did not properly weigh the mitigating evidence. We affirm.

¶ 4　　The following background is derived in large part from our order on direct appeal. As defendant only challenges his sentence in case number 16 CR 3745, we only discuss case number 16 CR 3744 to the extent necessary for understanding defendant's contentions on appeal.

¶ 5　　In case number 16 CR 3744, defendant was charged with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 1998)), which alleged he knowingly committed acts of sexual penetration upon W.M. by inserting his finger into her vagina when W.M. was under 13 years of age.

¶ 6　　In case number 16 CR 3745, defendant was charged with 14 counts of various sex crimes arising out of a series of incidents in which he committed acts of sexual penetration and sexual conduct against the minor D.G. Counts I and II alleged aggravated criminal sexual assault

premised on defendant's threat to kill D.G. during the commission of the offense. Counts III, V, and VI alleged criminal sexual assault premised defendant's use of force or threat of force. Counts IV, VII, and VIII alleged criminal sexual assault premised on defendant's status as D.G.'s family member. Counts IX and X alleged aggravated criminal sexual abuse premised on defendant's threat to kill D.G. during the commission of the offense. Counts XI and XIII alleged aggravated criminal sexual abuse premised on defendant's status as D.G.'s family member. Counts XII and XIV alleged aggravated criminal sexual abuse premised on defendant's use of force or threat of force.

¶ 7    Most relevant here are counts IV and XI, on which defendant was ultimately sentenced. Count IV alleged criminal sexual assault premised on defendant's mouth making contact with D.G.'s vagina's and his status as D.G.'s family member. Count XI alleged aggravated criminal sexual abuse premised on defendant's touching D.G.'s breast and his status as D.G.'s family member

¶ 8    Case numbers 16 CR 3744 and 16 CR 3745 were joined for trial. At trial, W.M. testified that, in 1998, she was eight years old and lived with her mother, her sister D.G., and defendant, whom she identified in court. From the summer of 1998, defendant inserted his fingers into W.M.'s vagina every week or two until approximately 2001. W.M. did not tell anyone what defendant was doing to her because she "was scared because he had threatened [her]."

¶ 9    D.G. testified she was 13 years old in the summer of 1998. At that time, she lived with her mother, siblings, and defendant, whom she identified in court, and who was her mother's boyfriend. One night when D.G.'s mother was out of town, D.G. and defendant watched television in defendant's bedroom. Defendant squeezed D.G.'s left breast with his hand underneath her gown.

Defendant removed D.G.'s underwear, put on a condom, and laid on top of her. D.G. felt defendant's penis inside her and pushed him off her. Defendant removed the condom and put his lips, mouth, and tongue on D.G.'s vagina.

¶ 10    D.G. did not tell anyone what happened that night because she was "[a]fraid of what [defendant] might do" based on a prior incident in which defendant touched her buttocks. That time, when D.G. suggested she would tell her mother, defendant said, "I'll kill you, your mom is not going to believe what you're saying" and he would kill her family. D.G. "backed down" as a result of these threats, which made her feel "[a]fraid."

¶ 11    Five or six times thereafter in the summer of 1998, defendant entered D.G.'s bedroom at night, moved her underwear to the side, placed his lips and tongue on D.G.'s vagina, and squeezed her breasts. In the fall of 1998, defendant did the same thing more times than D.G. could count. Defendant continued to do this at least once a week through 2001. When defendant put his mouth on D.G.'s vagina, he did not say anything. D.G. did not tell anyone what defendant had done because she was "afraid he would kill [her] family." Defendant's acts stopped when D.G. moved out of the house in the summer of 2001. She did not report the abuse to police until she was an adult, when she learned her younger sister, W.M., had also been abused by defendant.

¶ 12    Defendant testified, denying he had any sexual contact with D.G. or W.M.

¶ 13    The trial court found defendant guilty on all counts in both cases, except for criminal sexual assault counts V and VI in case number 16 CR 3745 premised on his penis and mouth making contact with D.G.'s vagina by use or threat of force. It acquitted defendant of counts V and VI because it did "not find that the Defendant ever threatened the victim in this case, threatened or –

\*\*\* there were threats of hurting the mother. There was no – during the attack, there was no force used, no testimony of force or threat of force."

¶ 14    At sentencing, in case number 16 CR 3744, the court sentenced defendant to two consecutive 20-year sentences. In case number 16 CR 3745, the court merged counts II, III, IV, VII, and VIII into aggravated criminal sexual assault count I and imposed 30 years' imprisonment. The court merged counts X through XIV into aggravated criminal sexual abuse count IX and imposed 5 years' imprisonment, to run consecutively to the 30-year sentence.

¶ 15    On direct appeal, defendant challenged the trial court's findings of guilt premised on his commission of the offenses by use or threat of force, or threatening D.G.'s life during the offenses. The State conceded that, as to counts I and IX, the evidence did not establish that defendant threatened to kill D.G. during those offenses. We agreed, vacated defendant's convictions on those counts, and remanded for sentencing on the merged counts. *Mitchell*, 2020 IL App (1st) 181740-U, ¶ 23.

¶ 16    On remand, the State dismissed counts II and X as they were predicated on threatening or endangering D.G.'s life. Defendant then argued that he should not be sentenced on counts III, XII, and XIV because those counts were also predicated on the use or threat of force. Over the State's objections, the court entered findings of not guilty on counts III, XII, XIV. The only remaining counts were counts IV, VII, and VIII for criminal sexual assault and counts XI and XIII for aggravated criminal sexual abuse, which all pertained to defendant's status as D.G.'s family member.

¶ 17    Defendant's presentence investigative report (PSI) reflected that he worked two jobs in the five years preceding his arrest and had a "very good" relationship with his daughters. The PSI

showed defendant had prior convictions for domestic battery in 2001, escape and burglary in 1987, and attempted burglary in 1983. At his original sentencing hearing, the State corrected the PSI to include a 2011 conviction for felony unlawful use of a recording. At the sentencing hearing on remand, defendant noted an additional location where he worked prior to his arrest.

¶ 18    In aggravation, the State argued that defendant caused or threatened serious harm to D.G., highlighted defendant's criminal history, and addressed the need to deter others from committing the same crimes. The State asked the court to take the sentence and facts in case number 16 CR 3744 "as [the court] reviewed them." The court and the State had a brief colloquy to clarify the age of W.M. at the time of the offense in case number 16 CR 3744.

¶ 19    The State read D.G's original victim statement, submitted in February 2018, into the record. D.G. stated that defendant raped her while her mother was on a trip. Defendant told D.G. "never to tell anyone or he would kill my family." D.G. explained that she "didn't know how to stop him. Every time I tried, he would say something to scare me. I gave up trying because ever [*sic*] time I tried to stop him, he made my life worse." D.G. further detailed how defendant's actions caused her to fail junior year of high school and still affected her at the time of writing the statement. Additionally, D.G. detailed how her mother did not believe her when she told her mother about defendant's actions, and how this still caused her significant pain. The State requested a "substantial penitentiary sentence."

¶ 20    In mitigation, defendant argued that his prior felony convictions occurred in the 1980s, "substantially" prior to the allegations in the case and "significantly" before his arrest in 2016. Therefore, those convictions did not suggest that defendant "didn't learn his lesson" and

"continued to pick up cases." Further, defendant was employed before he was arrested, had three adult children, and had significant ties to the community

¶ 21 In allocution, defendant maintained his innocence and referred to D.G. by her initials. Defendant asked for the minimum sentence of seven years, comprising four years for count IV and three years for count XI.

¶ 22 In announcing its sentence, the court stated that it would not consider any threats of harm in accordance with the previous ruling that "there was no use of force or threat of force." Nor would it consider defendant's prior convictions because "those were long-ago sentences." The court explained,

> "The offense speaks for itself. It just is what it is, and the reality is you don't need to use force or threat of force to harm a 14-year old or a 12-year old or a 13-year old or an 8-year-old child. It is what it is. A grown man touching a child is incomprehensible, is reprehensible, and it makes me believe you must be dead inside. So I struggle to think of what words I should use, I began to realize that no words would permeate because if someone is already dead inside, it doesn't even matter."

¶ 23 The court further stated that it would give defendant "grace" for not using the victim's name in his allocution. The court merged counts VII and VIII into criminal sexual assault of a family member count IV (720 ILCS 5/12-13(a)(3) (West 1998)) and sentenced defendant to 13 years' imprisonment. The court merged count XIII into aggravated criminal sexual abuse of a family member count XI (720 ILCS 5/12-16(b) (West 1998)) and sentenced defendant to four years' imprisonment, to be served consecutively to count IV. In delivering the sentence, the court initially misstated the counts that merged and the counts on which sentence was imposed. While

clarifying the sentence with the State, the court commented, "that is what I have written down even thought I couldn't get it out of my brain—my mouth because my mouth will not be silenced as a child's was."

¶ 24     On appeal, defendant alleges several sentencing errors, (1) the trial court considered the facts of case number 16 CR 3744 concerning W.M.; (2) the trial court considered the harm caused by defendant's actions in the present case, which was inherent in the offenses; (3) the State argued that defendant held a position of trust over D.G., another factor inherent in defendant's offenses; and (4) the court failed to consider defendant's lack of recent criminal activity.

¶ 25     Defendant did not file a postsentencing motion. Thus, the sentencing claims are forfeited and may not be considered on appeal except under plain error review. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Enoch,* 122 Ill. 2d 176, 186 (1988) (claims of error not raised in a posttrial motion are forfeited).

¶ 26     Based on the supreme court's recent decision in *People v. Johnson*, 2024 IL 130191, defendant concedes in his reply brief that second-prong plain error does not apply to his contentions in this case. See *id.* ¶¶ 59, 90-93, 96 (second prong plain error arises in the sentencing contest only when the error impacts the framework in which sentencing proceeds, rather than mere errors in the sentencing itself; consideration of an improper aggravating factor, where prejudice is not presumed, is a mere error in sentencing itself and is therefore not subject to second prong plain error review). Defendant, however, requests first-prong plain error review, under which he must demonstrate that the evidence at sentencing was "so closely balanced that the error alone severely threatened to tip the scales of justice against him." *People v. Herron*, 215 Ill. 2d 167, 187 (2005);

*People v. Hillier*, 237 Ill. 2d 539, 545 (2010). We first, however, must determine whether an error occurred. See *People v. Garner*, 2016 IL App (1st) 141583, ¶ 28.

¶ 27    A sentence within the applicable statutory range is presumed proper. *People v. Webster*, 2023 IL 128428, ¶ 21. In that case, the sentence "will not be disturbed absent an affirmative showing that the sentence is at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense." *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 28    Criminal sexual assault, a Class 1 felony, has a sentencing range of 4 to 15 years' imprisonment. 720 ILCS 5/12-13(a)(3) (West 1998); 730 ILCS 5/5-8-1(a)(4) (West 1998). Aggravated criminal sexual assault, a Class 2 felony, has a sentencing range of 3 to 7 years' imprisonment. 720 ILCS 5/12-16(a)(5) (West 1998); 730 ILCS 5/5-8-1(a)(5) (West 1998). Thus, defendant's sentences of 13 years' imprisonment on criminal sexual assault count IV and 4 years' imprisonment on aggravated criminal sexual assault count XI fall within their respective sentencing ranges and, therefore, are presumed to be proper. See *Webster*, 2023 IL 128428, ¶ 21.

¶ 29    The presumption is that the trial court "considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors or relied on improper aggravating factors." (Internal quotation marks omitted.) *People v. Streater*, 2023 IL App (1st) 220640, ¶ 73. "The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Defendant does not make that affirmative showing here.

¶ 30    Defendant argues that, during sentencing, the court improperly considered the facts and sentence of case number 16 CR 3744 concerning W.M. Defendant points to the court's comments

that force is not required "to harm a 14-year-old or a 12-year-old or a 13-year old or an 8-year-old child," as indication that the court considered "facts of other offenses for which [defendant] has already been punished." While the State did ask the court to take the sentence and facts in case number 16 CR 3744 "as [the court] reviewed them," the court never made an explicit statement about 16 CR 3744 and only referenced it when clarifying the ages of the victims at the time of the offenses. Because defendant has not provided any affirmative evidence that the court considered case number 16 CR 3744 in sentencing, we find no error.

¶ 31    Next, defendant argues that the court improperly referenced harm inherent in the offenses when the court said that force is not required to "harm" a child and that its "mouth would not be silenced as a child's was." A trial court may not consider a factor inherent to the offense in aggravation at sentencing. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 55. However, "[t]he rule that a court may not consider a factor inherent in the offense is not meant to be applied rigidly, because sound public policy dictates that a sentence be varied in accordance with the circumstances of the offense." (Internal quotation marks omitted.) *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007). Thus, the court may properly consider the nature and circumstances of the offense, including "the nature and extent of each element of the offense as committed by the defendant." *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 55.

¶ 32    Further, "[e]ven if the sentencing court mentions the improper fact, a defendant must show that the court relied on the particular improper fact when imposing the sentence." *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. "[T]he question of whether a court relied on an improper factor in imposing a sentence ultimately presents a question of law to be reviewed *de novo*." (Internal quotation marks omitted.) *People v. Streater*, 2023 IL App (1st) 220640, ¶ 73.

¶ 33    Defendant relies on *People v. Calva*, 256 Ill. App. 3d 865 (1993), to argue that physical and psychological harm to a child is implicit in sex offenses and cannot be considered as a factor in aggravation. Subsequent decisions, however, have rejected *Calva* and found it appropriate for the trial court to consider whether the defendant's conduct caused or threatened serious harm. See, *e.g.*, *People v. Nevitt*, 228 Ill. App. 3d 888, 892 (1992) (the psychological harm to the three-year-old victim was a proper sentencing consideration); *People v. Kerwin*, 241 Ill. App. 3d 632, 636 (1993) (not improper for the trial court to consider the emotional harm to the nine-year-old victim as an aggravating factor); see also *People v. Huddleston*, 212 Ill. 2d 107, 134-36 (2004) (discussing the psychological trauma suffered by young victims of criminal sexual assault). Therefore, the court could consider the harm to D.G. during sentencing.

¶ 34    Defendant nevertheless argues that the State presented insufficient evidence at sentencing to support a finding of serious physical or psychological harm. Specifically, defendant argues that because D.G.'s statement mostly focused on her relationship with her mother, most of the harm she experienced was caused by her mother and not defendant. We note that direct evidence in the record establishing psychological harm is not required, and the trial court may infer harm. See, *e.g.*, *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 22. Regardless, after viewing the record, we believe the court could infer that defendant caused D.G. psychological harm. In D.G.'s victim statement, she explained how defendant's actions made her "life worse," caused her to lose focus in high school, and still affected her. D.G.'s statement also addressed her relationship with her mother, but the catalyst for the relationship deteriorating was defendant's actions. Therefore, it was not error for the court to consider such harm to D.G.

¶ 35    Next, defendant asserts that the State argued that defendant was in a position of trust over D.G., which is inherent in the offense. While the State did mention defendant's position of trust in aggravation, the court did not. In any event, the trial court is not required to refrain from any mention of the factors which constitute elements of an offense, and the mere reference to the existence of such a factor is not reversible error. *People v. Jones*, 299 Ill. App. 3d 739, 746 (1998); see also *People v. Estrella*, 170 Ill. App. 3d 292, 298 (1988) (in reviewing whether a sentence is properly imposed, this court should not focus on a few words of the trial court, but should consider the record as a whole). Therefore, we find no error.

¶ 36    Finally, defendant argues that the court did not properly consider his lack of recent criminal activity in its sentencing decision. The court is presumed to have considered all mitigating factors, including defendant's lack of recent criminal activity, and that presumption cannot be overcome unless the defendant proves otherwise with affirmative evidence. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 22. Defendant has offered no such affirmative evidence. Rather, the record shows that the court was aware of defendant's criminal record and, in fact, stated that it would not consider his prior convictions because they were "long ago."  Defendant is essentially urging this court to reweigh the sentencing factors and assign greater weight to his lack of criminal activity than did the sentencing court, which we are not permitted to do.  *People v. Scott*, 2015 IL App (1st) 131503, ¶ 48 (a reviewing court may not reverse a sentence "just because it would have weighed the factors differently"). Therefore, we find no error.

¶ 37    Because we have found no sentencing error, there can be no plain error to excuse defendant's forfeiture of his sentencing challenge. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 38    For the foregoing reasons, we affirm the trial court's judgment.

¶ 39    Affirmed.